[Civ. No. 5843. Third Appellate District.—May 26, 1937.]

ARLIN E. STOCKBURGER, as Director of the Department of Finance, Petitioner, v. HARRY B. RILEY, as Controller, Respondent.

Webb Shadle for Petitioner.

C. C. Carleton, Frank B. Durkee, C. R. Montgomery and Robert E. Reed, as *Amici Curiae* on Behalf of Petitioner.

U. S. Webb, Attorney-General, and Robert W. Harrison, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Petitioner seeks, by this proceeding in *mandamus*, to compel the controller of the state to draw a warrant in payment of a claim for services rendered pursuant to an agreement entered into between the state of California and American Building Maintenance Company.

By this agreement the American Building Maintenance Company, called the contractor therein, agreed to furnish to the state all labor and materials necessary to clean the windows in certain of the state buildings in the city of Sac-

ramento. The agreement specifies the several buildings, and fixes a schedule by which this work is to be done, it being so arranged that the work is continuous throughout the year, throughout every month in the year, though not on the same building each month. Compensation for this service is payable in monthly instalments. It is also provided that the contractor is to indemnify the state for any and all claims for losses resulting to persons employed in the work, or third persons who might be injured by the contractor in the performance of the agreement, it being understood that the contractor, in the performance of the agreement, is acting in an independent capacity, and not as an officer or employee or agent of the state.

A claim for services rendered pursuant to this agreement was presented to the controller, who refused to allow the same or to issue his warrant in payment thereof, asserting that such claim was not a legal charge against the state and was in violation of article XXIV of the state Constitution, being the so-called civil service amendment adopted in 1934.

The question presented by this proceeding is whether article XXIV of the Constitution includes and controls all service of the character described in the agreement here before us so as to require such services to be rendered by persons employed pursuant to the civil service provisions or whether it is within the power of said officers and departments to contract individually for services of such character and without compliance with the civil service requirements.

The controller maintains that the services contracted to be rendered in the agreement is a service contemplated and required to be rendered to the state by employees of the state hired or appointed pursuant to the provisions of article XXIV of the Constitution, a type of service heretofore and now rendered by regular employees of the state who are under the provisions of the state civil service, and that there were, at the time said agreement was entered into, persons upon the eligible list in the said state civil service who were and are capable of performing such services, but who were not hired or appointed to perform the same, and that said agreement was and is invalid and not a legal claim for payment of any claim against the state for services rendered thereunder.

The solution of this question is one of considerable difficulty; not all those performing services for the state are

under civil service, the amendment itself specifically exempting some fourteen groups of officers and employees, and furthermore there still is recognized a field wherein the state may engage the services of one under special contract or agreement outside of civil service, as an independent contractor.

It is undisputed that under article XXIV of the Constitution the legislature may provide for the appointment to offices and positions in the state service according to merit and fitness, to be ascertained by competitive examinations, and to grant promotions in recognition of ability.

Undoubtedly the execution of this agreement was entered into by the department because for some time the service here under consideration has been performed in the state offices in Sacramento by independent contractors, and such service has been efficiently and economically rendered, perhaps more so than under civil service, but that, however, is a matter with which neither the petitioner nor the courts are governed; such matter was for the people alone to have considered when they adopted the civil service amendment, and in view of the direct and emphatic expression of policy in the amendment, a definite design is apparent to embrace all classes of service within the state civil service system.

Petitioner, however, recognizes that the legal test as to whether the service may be performed under an independent contract or state civil service, does not depend upon economy or efficiency, but takes the position that whenever a specific service can be performed under an independent contract, such contract should be executed, if greater economy and efficiency can be obtained thereby.

In the particular service provided in the agreement we are now considering, there is nothing urgent, temporary, or occasional in the work to be done. It requires no expert knowledge, experience or ability that cannot be obtained from those either now in the employ or service of the state, or who cannot be brought into such service under the procedure provided by the Civil Service Act.

When civil service was adopted, the people determined as a matter of policy, that the provisions thereof applied to every officer and employee of the state except certain excepted classes, under no one of which the present character of services falls. All classes of service to the state are recognized wherein the work or labor to be performed is of that

character with respect to which fitness thereof may be had by competitive examination, or as to which merit or efficiency may be developed or increased by continuous service or by promotion and recognition of demonstrated ability. The type of character of such service is not confined to that wherein but a moderate degree of proficiency prevails, but embraces not only the less skilled types of labor, but also the most skillful types, including the various professions of engineering in all its fields, medicine, and law, and experts in the different vocations and occupations.

By section 1 of article XXIV of the Constitution, it is provided, "Permanent appointments and promotion in the State Civil Service shall be made exclusively under a general system based upon merit, efficiency and fitness as ascertained by competitive examination." Section 3 of the amendment creates a state personnel board which is to administer and enforce the Civil Service Act (chap. 590, Stats. 1913, as amended), and all other state civil service laws. In section 4a it is declared, "The provisions hereof shall apply to, and the term 'State Civil Service' shall include every officer and employee of this State except . . . , " and thereafter follow fourteen excepted classes of persons, under no one of which falls the present character of service. Immediately following these exceptions it is provided that the legislature may, by law, apply the provisions of that article to those persons hereinbefore excepted, other than those mentioned in certain paragraphs and except for those particular exceptions, the legislature is powerless to make further exceptions.

In subdivision c of section 4, it is provided that whenever the appointment or employment of new or additional officers or employees is authorized, such officers or employees shall be subject to the provisions of the Civil Service Act unless of a class excepted therein. The act further provides that all persons other than temporary appointees are to be continued in the service of the state without change. of class or grade, and all temporary appointees, upon the adoption of the amendment, are to continue to hold their positions subject to the provisions of the act and for such a limited probationary term as the board might fix, and all other persons holding positions subject to the Civil Service Act for less than six months preceding the effective date of the amendment are deemed to hold their positions under temporary appointment. It is then provided by section 4 of the amend-

ment, subdivision a thereof, that no temporary appointment of a person to any position shall be made unless there is no eligible list from which such position can be filed; and in subdivision b, that no further temporary appointment shall be made to a given position after such a position has been filled by a temporary appointment for a period of six months; and in subdivision c, no person shall hold a position under temporary appointment for a longer period than six months, and no person shall serve in the state civil service under temporary appointment for a longer total period than six months in any one calendar year. The State Civil Service Act, passed to make effective the constitutional amendment, provides that whenever the appointing power desires a service and has no one available to perform the same, the personnel board shall certify to the appointing power names from the eligible list for the class or grade to which the position belongs. If there is no eligible list from which the position may be filled, it is then provided, that with the consent of the personnel board, such position may be filled by temporary appointment, and section 12 of the act provides for emergency appointments. None of these requirements were, in the instant case, complied with, and it was for that reason the respondent controller refused to approve the claim or to draw his warrant in payment thereof.

Petitioner claims that the Civil Service Act and the constitutional amendment are limited to relationship of master and servant, and employer and employee, and do not prohibit independent contracts, and cites from foreign jurisdictions in support thereof.

The citation of authorities, however, from other jurisdictions does not greatly assist in the solution of this problem. This is a matter upon which the legislature and the people of California had the right and power to speak, and having spoken, it is the duty of the courts to carry out their mandate as far as legally can be done.

It seems clear that under our constitutional amendment and Civil Service Act it was the purpose to bring under its provisions all services to be rendered to the state except where specifically excepted. The services here to be performed were not the excepted classes, and we must hold that the appointing office was without authority to enter into an independent contract for the work to be performed.

In view of the inclusive provisions of the constitutional amendment and the Civil Service Act, it is not reasonable to assume it was the intention that service of the character which had theretofore been performed for the state by state employees, and which employees were, by such amendment, included in and made a part of the civil service system, was thereafter to be the subject of independent contract. It is unreasonable that the same character of state service should be rendered by civil service employees in one part of the state, and be a subject of independent contract in another part of the state. If this agreement is valid there is nothing to prevent similar agreements from being made with relation to other janitor service, gardening, typing, and many other branches of service now accepted as subject to civil service. To sanction such an agreement would destroy the effectiveness of the enactment of the people in creating a Civil Service Act.

Having in mind, therefore, that the work was continuous, rather than intermittent, permanent rather than temporary, general rather than special, not confidential in its nature, unskilled rather than highly technical, a type of service already performed by employees under civil service in other departments of the state, and having in mind the intent and purpose of the people in adopting the particular amendment under consideration, and that the sanctioning of such contract as here before us would have the result of weakening or destroying the effect of the civil service, we are constrained to hold that the writ should be denied. It is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 22, 1937, and an application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 22, 1937.