[No. C000698. Third Dist. Mar. 22, 1988.]

CALIFORNIA STATE EMPLOYEES' ASSOCIATION,
Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Gary P. Reynolds and Howard Schwartz for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Faith Geoghegan, Deputy Attorney General, Talmadge R. Jones and Christine A. Bologna for Defendants and Respondents.

Ronald A. Zumbrun, Anthony T. Caso, Jonathan M. Coupal and Richard M. Stephens as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

PUGLIA, P. J.—In this appeal, we reject a facial challenge to the constitutionality of subdivision (a) of Government Code section 19130, which specifies the conditions under which the State of California can contract with "firms" in the private sector for the performance of personal services. (Gov. Code, § 19130 is set forth in full at Appendix A, *post*; all statutory references to sections of an undesignated code are to the Government Code.)

Plaintiff, California State Employees' Association, appeals from a judgment denying a petition for writ of mandate wherein plaintiff sought to have defendant state ordered to refrain from entering into personal service contracts pursuant to subdivision (a) of section 19130. (Sometimes referred to hereafter as "subdivision (a).") The trial court rejected plaintiff's claim that subdivision (a) is irreconcilable with article VII of the California Constitution and therefore unconstitutional on its face.

Article VII, section 1, provides: "(a) The civil service includes every officer and employee of the state except as otherwise provided in this Constitution. [¶] (b) In the civil service permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination." Article VII creates the State Personnel Board (§ 2) to which enforcement and administration of the civil service laws are delegated (§ 3) and exempts certain positions from the civil service (§ 4) which otherwise shall embrace ". . . every officer and employee of the state." (§ 1.) Article VII is implemented by the state Civil Service Act. (§ 18500 et seq.; see *California State Employees' Assn.* v. *Williams* (1970) 7 Cal.App.3d 390, 395 [86 Cal.Rptr. 305].)

██ Decisional law interprets article VII as a restriction on the "contracting out" of state activities or tasks to the private sector. (*State Compensation Ins. Fund* v. *Riley* (1937) 9 Cal.2d 126, 134-135 [86 Cal.Rptr. 305]; *Burum* v. *State Compensation Ins. Fund.* (1947) 30 Cal.2d 575, 579-582 [184 P.2d 505]; *San Francisco* v. *Boyd* (1941) 17 Cal.2d 606, 618-620 [110 P.2d 1036]; *Kennedy* v. *Ross* (1946) 28 Cal.2d 569, 571-573 [170 P.2d 904]; *Stockburger* v. *Riley* (1937) 21 Cal.App.2d 165, 167-169 [68 P.2d 741]; *California State Employees' Assn.* v. *Williams, supra*, at p. 392.) The restriction does not arise from the express language of article VII. (*Id.,* p. 397.) "Rather, it emanates from an implicit necessity for protecting the policy of the organic civil service mandate against dissolution and destruction." (*Ibid.*)

Subdivision (a) of section 19130 codifies State Personnel Board (Board) standards concerning the award of contracts to private "firm[s]" to perform

work for the state in order to achieve cost savings.[1] These contracts are commonly referred to as personal service contracts. Subdivision (a) permits personal service contracts "to achieve cost savings" only when a number of other conditions relating to civil service objectives are met. Thus, the contract must not "undercut state pay rates" (subd. (a)(2)), "cause the displacement of civil service employees" (subd. (a)(3)), or "adversely affect the state's affirmative action efforts" (subd. (a)(4)). Subdivision (a) also requires the contract to contain specific provisions pertaining to the qualifications of the staff which will perform the work to be contracted out, as well as requiring "assurance that the contractor's hiring practices meet applicable nondiscrimination, affirmative action standards" (subd. (a)(8)). Subdivision (a) further requires that the contract be awarded "through a publicized, competitive bidding process" (subd. (a)(7)), and that "[t]he potential economic advantage of contracting [for personal services] is not outweighed by the public's interest in having a particular function performed directly by state government" (subd. (a)(11)).

Subdivision (b) of section 19130 (Appen. A, *post*) codifies judicially imposed conditions on the award of personal service contracts outside the civil service system. Plaintiff does not challenge the constitutionality of subdivision (b) but argues that the conditions codified therein are exclusive and that all government services not meeting those conditions are required by article VII to be performed by persons selected and appointed under the state civil service system; since subdivision (b) of section 19130 makes no allowance for contracting with private firms to achieve cost savings, subdivision (a) in purporting to do so violates the merit principle of article VII and is unconstitutional on its face.

Fundamental principles of constitutional adjudication inform our analysis. "Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution. [Citations.] . . . [¶] Secondly, all intendments favor the exercise of the Legislature's plenary authority: 'If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not

---

[1] "A 'firm' means a corporation, partnership, nonprofit organization, or sole proprietorship." (§ 19130 (a)(10).)

covered by the language used.' [Citations.]" (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 691 [97 Cal.Rptr. 1, 488 P.2d 161]; see *Binns* v. *Hite* (1964) 61 Cal.2d 107, 111 [37 Cal.Rptr. 323, 389 P.2d 947].)

■  Section 19130 explicitly acknowledges the relevant constitutional provisions. (See § 19130, subds. (b)(1), (c).) "In such a case, the statute represents a considered legislative judgment as to the appropriate reach of the constitutional provision." (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 180 [172 Cal.Rptr. 487, 624 P.2d 1215].) That judgment is entitled to significant weight and deference. All doubts must be resolved in favor of the Legislature's action.

It is conceivable, perhaps even likely, that a constitutional conflict with article VII will arise in the application of subdivision (a). However, merely because it is possible to hypothesize such a conflict does not render subdivision (a) unconstitutional on its face. Plaintiff cannot prevail merely by showing that particular applications of the statute in the future might create a constitutional conflict. (*Pacific Legal Foundation, supra,* at p. 180; *Estate of Monks* (1941) 48 Cal.App.2d 603, 614-615 [120 P.2d 167].) Rather, it is plaintiff's burden to demonstrate that the statute "inevitably pose[s] a present total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation, supra,* at p. 181.)

■  However, far from displacing or destroying the constitutional scheme, subdivision (a) of section 19130 is carefully crafted to permit personal service contracts to achieve cost savings only when they will have no detrimental effect on the integrity of the civil service system. Thus it requires more than a demonstration of cost savings to satisfy subdivision (a); it must also satisfactorily be shown that civil service objectives are protected, including maintenance of state pay rates (subd. (a)(2)), nondisplacement of civil service employees (subd. (a)(3)), affirmative action (subds. (a)(4), (a)(8)), and nondiscrimination (subd. (a)(8)). The statute combines considerations of efficiency and economy with other interests, including those of state employees. (*California State Employees' Assn.* v. *State Personnel Bd.* (1986) 178 Cal.App.3d 372, 381 [223 Cal.Rptr. 826].)

■, ■  The purposes of article VII as disclosed in the ballot argument of its predecessor, former article XXIV, are not in conflict with subdivision (a) of section 19130.[2] The constitutional provisions relating to the civil

---

[2] Article VII derives directly from former article XXIV which was revised in 1970 under the auspices of the California Constitution Revision Commission and readopted as article VII. (*Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d at p. 184, fn. 8.) The revision ". . . made no substantive changes in the provisions relevant to [the civil service system] and mere-

service were adopted in part "to promote efficiency and economy in state government." A statute dealing with the civil service which has cost savings as an object is hardly in conflict with notions of governmental efficiency and economy.

A second purpose of article VII and its predecessor was to eliminate the "spoils system" of political patronage by establishing a merit system whereby appointments to public service positions are based upon demonstrated fitness rather than political considerations.[3] However, nothing within subdivision (a) of section 19130 permits the displacement of present employees by political appointees. Nor does it allow the state to bring in new employees through political appointment. To the contrary, all contracts awarded pursuant to subdivision (a) must be consistent with civil service objectives, including nondiscrimination and nondisplacement of civil service personnel. (Subds. (a)(3), (4), (8); see Pub. Contracts Code, §§ 10337, 10362.) Moreover, subdivision (a) requires cost comparisons, quality controls, and, most importantly, a publicized, competitive bidding process. (Subds. (a)(5), (6), (7), (8).)[4] Far from presaging a return to the spoils system, subdivision (a) contains effective safeguards against the evils of the past.

Article VII and its predecessor article XXIV left the Legislature a "free hand" in setting up laws relating to personnel administration for the best interests of the state. (*Pacific Legal Foundation, supra,* 29 Cal.3d at p. 184.) The civil service article "was not presented as an organic blueprint for the structure of agencies within the state's executive branch." (*California State Employees' Assn.* v. *Williams, supra,* 7 Cal.App.3d at p. 398.) Nor was it intended to foreclose the Legislature from adopting policies which do not impinge on the merit principle. (*Pacific Legal Foundation, supra,* at pp. 194-196.)

---

ly deleted obsolete and superfluous language from the original provisions." (*Ibid.*) The ballot argument in favor of former article XXIV is set forth in Appendix B, *post.* "California decisions have long recognized the propriety of resorting to such election brochure arguments as an aid in construing . . . constitutional amendments adopted pursuant to a vote of the people." (*White* v. *Davis* (1975) 13 Cal.3d 757, 775, fn. 11 [120 Cal.Rptr. 94, 533 P.2d 222].) This particular ballot argument has been considered in numerous decisions. (E.g., *State Personnel Bd.* v. *Fair Employment & Housing Com.* (1985) 39 Cal.3d 422 at p. 436 [217 Cal.Rptr. 16, 703 P.2d 354]; *Pacific Legal Foundation, supra,* at pp. 181-184.)

[3] The state civil service article was adopted by the voters because legislative attempts to combat the "spoils system" of political patronage in state employment largely failed. (*State Personnel Bd.* v. *Fair Employment & Housing Com., supra,* 39 Cal.3d at p. 436.) The 1934 ballot argument " 'makes it quite plain that the draftsmen of the provision intended only "to prohibit appointment and promotion in State service except on the basis of merit," and did not intend to engrave into the state Constitution every aspect of the then current civil service system.' " (*Ibid.*)

[4] The requirement of a publicized, competitive bidding process is an adequate safeguard against patronage and favoritism. (See *California State Employees' Assn.* v. *Williams, supra,* at pp. 399-400 and fn. 8.)

The first Supreme Court decision interpreting former article XXIV as a restriction on contracting for personal services by state agencies was *State Compensation Ins. Fund* v. *Riley, supra*, 9 Cal.2d 126, 134-135. In *Riley,* the plaintiff fund, a public agency, retained a private attorney to provide legal services in connection with the threatened imposition of federal taxes. The fund sought a writ of mandate to compel the respondent controller to issue a warrant to pay the attorney for services rendered. At issue in the mandate proceeding was whether or not the fund could lawfully employ private counsel independently of the Board and outside of the civil service.

*Riley* held the fund was constitutionally required to proceed under civil service. Relying on the provisions of article XXIV and the ballot argument which accompanied its submission to the electorate, the *Riley* court formulated a test to determine when employees must be hired through state civil service: "There undoubtedly is a field in which state agencies may enter into contracts with independent contractors. But the true test is not whether the person is an 'independent contractor' or an 'employee', but whether the services contracted for, whether temporary or permanent, are of such nature that they could be performed by one selected under the provisions of civil service. If the services could be so performed then in our opinion it is mandatory upon such appointing power to proceed in accordance with the provisions of the Constitution and statute above summarized. As already stated, the petition does not allege that the services here involved could not be performed *satisfactorily* by an attorney selected under civil service. The services contracted for are the services of an attorney. Attorneys are included within the civil service, and in the absence of a showing to the contrary we must assume that such services could be *adequately* and *competently* performed by one selected in accordance with the mandate of the Constitution. Any other construction of the constitutional provision would have the effect of weakening, if not destroying, the purpose and effect of the provision. With the policy of such all-embracing civil service law this court is not concerned—the policy has been declared and embodied in a constitutional provision, and all that this court has power to do is to enforce such clearly declared policy." (Italics added; 9 Cal.2d at pp. 134-136)

In *Burum* v. *State Compensation Ins. Fund, supra,* 30 Cal.2d 575, the fund hired plaintiffs, a firm of private attorneys, to pursue a lien claim on its behalf. The attorneys sued the fund to recover their fees under the agreement. The Supreme Court reversed a judgment of dismissal after the trial court had sustained a demurrer without leave to amend. The high court held the plaintiff attorneys had pleaded sufficient facts to demonstrate the particular services rendered "could not be performed adequately or competently or satisfactorily" by attorneys selected under civil service. The

pleading was thus held sufficient to bring the case within the exception to the test set forth in *State Compensation Ins. Fund* v. *Riley, supra.* (30 Cal.2d at p. 582.) In *California State Employees Assn.* v. *Williams, supra,* we labeled this test the "nature of the services" test. (7 Cal.App.3d at p. 396.)

Two Supreme Court cases decided in the interval between *Riley* and *Burum* applied a slightly different test. As we explained in *Williams, supra*: "The charter of San Francisco imposes civil service coverage comparable to that of article XXIV. In *San Francisco* v. *Boyd* (1941) 17 Cal.2d 606 [110 P.2d 1036], and *Kennedy* v. *Ross* (1946) 28 Cal.2d 569 [170 P.2d 904], the court held that contracts retaining expert engineering consultants did not impair that coverage. Each consultant was to hire his own staff. Significantly, the *Kennedy* case declares (28 Cal.2d at p. 573): '. . . Here the conclusion must be that the petitioner and his assistants do not by the contract become city employees in either permanent or temporary positions in the sense intended by the charter provisions. They are therefore not subject to classified civil service . . . . [¶] The foregoing conclusion is based on the assumption that the engagement outside the list of eligibles otherwise is legal and that the services for which the petitioner was engaged are not such as could adequately be rendered by an existing department of the city. . . . It was held in the Boyd case and recognized in the Rily [*sic*] case that the appropriate agency is empowered in proper cases to engage the services of an expert in a field covered by an existing department without a resulting illegal duplication of the functions and duties of existing officers and departments.' [¶] Thus the *Kennedy* case makes a functional inquiry rather than one focused on occupational tasks or skills. To paraphrase *Kennedy,* if the services cannot be adequately rendered by an existing agency of the public entity or if they do not duplicate functions of an existing agency, the contract is permissible. The two *State Compensation Insurance Fund* cases formulate a test in terms of individual taks [*sic*] or skills, the two San Francisco decisions in terms of agency function." (At pp. 396-397.)

In *Williams* our analysis of the pertinent decisions adumbrated the holding in that case. There the plaintiffs sought to enjoin public expenditures under statutes and a contract confiding administration of the state's Medi-Cal program to private insurers. Plaintiffs contended that the employment by the private contractors of numerous personnel outside of civil service to administer the program was in violation of article XXIV. In a case of first impression we denied injunctive relief. Observing that the Medi-Cal program was ". . . a new state function not previously conducted by any state agency and performed by contract under legislative direction and authority" (p. 401), we reasoned that ". . . the constitutional policy of a merit employment system within the system of state agencies engenders no

demand for achieving expansions of state function exclusively through the traditional modes of direct administration. It does not prohibit legislative experimentation in new forms to fit new functions. It compels expansion of civil service with expansions of state agency structure but does not force expansions of state agency structure to match extensions of state function. To the contrary, the state civil service suffers no displacement and the underlying constitutional policy is not offended when a new state activity is conducted by contract with a separate public or private entity." (At. p. 399.)

None of the decisions interpreting the restrictive effect of the civil service article on private contracting deals with legislation which balances cost savings with the interests of state employees and the public interest in a comprehensive civil service system. Moreover, with the exception of *Stockburger* v. *Riley, supra*, 21 Cal.App.2d 165, none of those decisions holds that cost savings may not be a factor to be considered in the award of contracts for personal services. (See 24 Ops.Cal.Atty.Gen. 173, 175-176 (1954).)

*Stockburger* v. *Riley* is the earliest of the decisions interpreting the constitutional civil service article as a restriction on private contracting. In *Stockburger* the state contracted with a private firm to furnish all labor and materials to clean the windows in certain state-owned buildings. The controller refused to pay the firm and the director of finance sought a writ of mandamus. This court framed the issue as ". . . whether article XXIV of the Constitution includes and controls all services of the character described in the agreement . . . so as to require such services to be rendered by persons employed pursuant to the civil service provisions or whether it is within the power of [the state] to contract individually for services of such character and without compliance with the civil service requirements." (21 Cal.App.2d at p. 166.) We held that the purpose of article XXIV was ". . . to bring under its provisions all services to be rendered to the state except where specifically excepted" by the article itself. Accordingly the state was ". . . without authority to enter into an independent contract for the work to be performed." (P. 169.)

The *Stockburger* court was properly concerned with vindicating the merit principle enshrined in the constitutional civil service article. To the extent its decision was driven by that concern, it is distinguishable from the instant situation. Here section 19130, subdivision (a), is itself hedged with conditions and requirements designed to protect the merit principle, most notably the requirements of competitive bidding ((a)(7)) and of specific contract provisions pertaining to the qualifications of the staff that will perform the work ((a)(8)). By contrast, from all that appears in *Stockburger,*

the contract was not subject to competitive bidding nor did the state have authority to set minimum qualifications for the workers employed by the contractor.

However *Stockburger* did reject the argument that a service should be performed under an independent contract whenever it can be done with greater efficiency and economy. In so doing, the court made no mention of the imperatives of efficiency and economy as expressed in the ballot pamphlet submitted to the electorate which enacted the civil service article. *Stockburger* preceded *Riley,* the earliest expression of the Supreme Court on the subject. By flatly eschewing considerations of efficiency and economy, *Stockburger* placed a more narrowly restrictive construction on the civil service article than did *Riley* or any of the later cases. For that reason, and because of its sweeping rejection of a major purpose of the civil service article—to promote efficiency and economy—we overrule *Stockburger* to the extent it is inconsistent with the views expressed herein.

We conclude there is no authoritative judicial impediment to upholding the facial constitutionality of subdivision (a) of section 19130. As we have pointed out, none of the decisions deals with legislation designed to achieve cost savings or for that matter, except for *Stockburger,* with a fact situation in which cost savings was in issue. Since cases are not authority for propositions not considered (*Williams, supra*, 7 Cal.App.3d at p. 397), there is no authoritative decision holding that cost savings cannot constitutionally be taken into account in the decision to contract out certain services. Given that efficiency and economy are as much an avowed purpose of article VII as the apotheosis of the merit principle and the demise of the spoils system, the absence of such authority is not surprising.

██ ██ Moreover, as we have seen, an established exception to the mandate of civil service exists where the nature of the services in question is such they cannot be performed "adequately or competently or satisfactorily" by employees selected through civil service. (*Riley*, p. 134-136; *Burum*, p. 582.) Without attempting to endow the quoted words with definitive content, under a constitutional scheme which commends efficiency and economy it is reasonable to postulate that at some point a service which is more costly when performed under civil service than when contracted out may on that account be one which cannot be performed satisfactorily, adequately or competently.

However, there is a question whether the *Riley/Burum* exception permitting contracting out of personal services which cannot be performed

adequately, competently or satisfactorily has any application to subdivision (a) of section 19130. The question arises because the *Riley/Burum* exception is expressly included only in subdivision (b) of section 19130 which provides in part: "Personal services contracting also shall be permissible when any of the following conditions can be met: . . . (3) The services contracted are not available within civil service, cannot be performed satisfactorily by civil service employees, or are of such a highly specialized or technical nature that the necessary expert knowledge, experience and ability are not available through the civil service system."

Notwithstanding the omission from its text, we are satisfied the *Riley/Burum* exception is an implicit part of subdivision (a). Section 19131 requires the Board to notify all affected state employee organizations regarding any proposed personal services contract and allows those organizations 10 days within which to request the Board to review the contract for compliance with the requirements of subdivision (a); the review shall be conducted in accordance with subdivision (b) of section 14831.6. Section 14831.6 has been repealed and readopted without significant change as Public Contract Code section 10337 (see Stats. 1983, ch. 1231, §§ 1.5, 4). Subdivision (b) of the latter section is virtually identical to subdivision (b) of former section 14831.6 and provides in part: "The State Personnel Board shall direct any state agency to transmit to it for review any contract proposed or executed pursuant to subdivision (a) of Section 19130 of the Government Code, if the review has been requested by an employee organization notified pursuant to section 19131 of the Government Code. The review shall occur prior to any review conducted by the Department of General Services. The board shall restrict its review to the question as to whether the contract complies with the provisions of subdivision (a) of Section 19130 of the Government Code *and any additional standards and controls established pursuant to subdivision (a) of this section.* The board may disapprove the contract only if it determines that the contract does not comply." (Italics added.)

Subdivision (a) of Public Contract Code section 10337 provides in part: "The State Personnel Board may establish such standards and controls over approval of contracts by the Department of General Services as are necessary to assure that the approval is consistent with the merit employment principles and requirements contained in Article VII of the California Constitution."[5]

---

[5] Contracts for services are not effective until approved by the Department of General Services (Pub. Contract Code, § 10335). Consulting services contracts also require prior approv-

Thus the criteria expressly set forth in subdivision (a) of section 19130 are not exclusive. They also include standards and controls adopted by the Board as necessary to safeguard the "merit employment principles and requirements contained in Article VII . . . ." (Pub. Contract Code, § 10337, subd. (a).) The *Riley/Burum* rule and its exception constitute an authoritative construction of article VII by which the Board is bound. In the protean posture of this facial constitutional challenge, we must assume the Board, in complying with its statutory duty to establish standards and controls, will give effect to decisional explications of the merit employment principles and requirements contained in article VII.

Plaintiff has failed to establish that there is no cost differential of any magnitude whatsoever that can bring a personal services contract within the *Riley/Burum* exception to the "nature of the services" test. Therefore, the facial attack on the statute must fail. (*People* v. *Harris* (1985) 165 Cal.App.3d 1246, 1255-1256 [212 Cal.Rptr. 216].)

█ We are not at liberty to remove from the Legislature the very discretion vested in it when the voters adopted first article XXIV and later article VII. The history of those articles demonstrates the voters wished to adopt a civil service system free from the whims of political partisanship and appointment. The voters did not intend, however, to impose upon the state a civil service system which eschews all considerations of fiscal responsibility and economy in favor of an infinitely expanding public payroll. Rather, the Legislature was entrusted to consider various alternatives with regard to civil service administration. In devising such alternatives, the Legislature may not ignore the purposes behind the constitutional civil service system; neither, however, must it abdicate fiscal responsibility and forego opportunities to realize substantial savings to the taxpayers. The goal of maintaining the civil service must be balanced with the goal of a fiscally responsible state government. In subdivision (a) of section 19130, the Legislature has harmonized the state's interest in efficiency and economy with that of maintaining a viable civil service as a central policy aim. (Cf. *California State Employees' Assn.* v. *Williams, supra*, 7 Cal.App.3d at p. 397.) Subdivision (a) of section 19130 does not facially conflict with article VII of the Constitution.

---

al of the Department of General Services (Pub. Contract Code, § 10360). Public Contract Code section 10362 confers upon the Board the identical powers with respect to consulting services contracts to establish approval standards and controls and to effect compliance review as it exercises under Public Contract Code section 10337 over contracts for services.

The judgment denying the petition for writ of mandate is affirmed.

Blease, J., and Sparks, J., concurred.

---

APPENDIX A

GOVERNMENT CODE SECTION 19130 PROVIDES AS FOLLOWS:

"The purpose of this article is to establish standards for the use of personal services contracts.

"(a) Personal services contracting is permissible to achieve cost savings when all the following conditions are met:

"(1) The contracting agency clearly demonstrates that the proposed contract will result in actual overall cost savings to the state, provided that:

"(A) In comparing costs, there shall be included the state's additional cost of providing the same service as proposed by a contractor. These additional costs shall include the salaries and benefits of additional staff that would be needed and the cost of additional space, equipment, and materials needed to perform the function.

"(B) In comparing costs, there shall not be included the state's indirect overhead costs unless these costs can be attributed solely to the function in question and would not exist if that function was not performed in state service. Indirect overhead costs shall mean the pro rata share of existing administrative salaries and benefits, rent, equipment costs, utilities and materials.

"(C) In comparing costs, there shall be included in the cost of a contractor providing a service any continuing state costs that would be directly associated with the contracted function. These continuing state costs shall include, but not be limited to, those for inspection, supervision, and monitoring.

"(2) Proposals to contract out work shall not be approved solely on the basis that savings will result from lower contractor pay rates or benefits. Proposals to contract out work shall be eligible for approval if the contractor's wages are at the industry's level and do not significantly undercut state pay rates.

"(3) The contract does not cause the displacement of civil service employees. The term 'displacement' includes layoff, demotion, involuntary transfer to a new class, involuntary transfer to a new location requiring a change of residence, and time base reductions. Displacement does not include changes in shifts or days off, nor does it include reassignment to other positions within the same class and general location.

"(4) The contract does not adversely affect the state's affirmative action efforts.

"(5) The savings shall be large enough to ensure that they will not be eliminated by private sector and state cost fluctuations that could normally be expected during the contracting period.

"(6) The amount of savings clearly justify the size and duration of the contracting agreement.

"(7) The contract is awarded through a publicized, competitive bidding process.

"(8) The contract includes specific provisions pertaining to the qualifications of the staff that will perform the work under the contract, as well as assurance that the contractor's hiring practices meet applicable nondiscrimination, affirmative action standards.

"(9) The potential for future economic risk to the state from potential contractor rate increases is minimal.

"(10) The contract is with a firm. A 'firm' means a corporation, partnership, nonprofit organization, or sole proprietorship.

"(11) The potential economic advantage of contracting is not outweighed by the public's interest in having a particular function performed directly by state government.

"(b) Personal services contracting also shall be permissible when any of the following conditions can be met:

"(1) The functions contracted are exempted from civil service by Section 4 of Article VII of the California Constitution, which describes exempt appointments.

"(2) The contract is for a new state function and the Legislature has specifically mandated or authorized the performance of the work by independent contractors.

"(3) The services contracted are not available within civil service, cannot be performed satisfactorily by civil service employees, or are of such a highly specialized or technical nature that the necessary expert knowledge, experience, and ability are not available through the civil service system.

"(4) The services are incidental to a contract for the purchase or lease of real or personal property. Contracts under this criterion, known as 'service agreements,' shall include, but not be limited to, agreements to service or maintain office equipment or computers that are leased or rented.

"(5) The legislative, administrative, or legal goals and purposes cannot be accomplished through the utilization of persons selected pursuant to the regular civil service system. Contracts are permissible under this criterion to protect against a conflict of interest or to insure independent and unbiased findings in cases where there is a clear need for a different, outside perspective. These contracts shall include, but not be limited to, obtaining expert witnesses in litigation.

"(6) The nature of the work is such that the Government Code standards for emergency appointments apply. These contracts shall conform with Article 8 (commencing with Section 19888) of Chapter 2.5 of Part 2.6.

"(7) State agencies need private counsel because a conflict of interest on the part of the Attorney General's office prevents it from representing the agency without compromising its position. These contracts shall require the written consent of the Attorney General, pursuant to section 11040.

"(8) The contractor will provide equipment, materials, facilities, or support services that could not feasibly be provided by the state in the location where the services are to be performed.

"(9) The contractor will conduct training courses for which appropriately qualified civil service instructors are not available, provided that permanent instructor positions in academies or similar settings shall be filled through civil service appointment.

"(10) The services are of such an urgent, temporary, or occasional nature that the delay incumbent in the implementation under civil service would frustrate their very purpose.

"(c) All persons who provided services to the state under conditions the board determines constitute an employment relationship shall, unless excepted from civil service by Section 4 of Article VII of the California Constitution, be retained under an appropriate civil service appointment."

## APPENDIX B

BALLOT PAMPLET, PROPOSED AMENDMENTS TO THE CALIFORNIA CONSTITUTION WITH ARGUMENTS TO THE VOTERS, GENERAL ELECTION, (NOVEMBER 6, 1934), ARGUMENT IN FAVOR OF PROP 7, P. 12.

"The purpose of this constitutional amendment is to promote efficiency and economy in State government. The sole aim of the acts is to prohibit appointments and promotion in State service except on the basis of merit, efficiency and fitness ascertained by competitive examination. Appointments of inefficient employees for political reasons are thereby prohibited, thus eliminating the 'spoils system' from State employment.

"Under existing laws the State Civil Service Commission has power to exempt any position from civil service and to authorize employment in State service solely as a reward for political activity. A large number of State positions have from time to time been declared exempt, thereby affording an opportunity for the employment of persons selected solely for political reasons without regard for character, ability, or the best interests of the State. In such cases not only does the State suffer but citizens are not given a fair and equal chance for employment.

"Although the law is supposed to guarantee those already in State employment freedom from the necessity of political activity and stability of employment during good behavior, the non-civil service employee frequently maintains his position through politics rather than through efficient and loyal service to the State.

"The act provides a nonpartisan Personnel Board of five members to serve ten-year terms so staggered that each new Governor will have but one appointment on a five-man board upon taking office. This four-to-one ratio will be an effective means of preventing political interference with the efficient administration of State business.

"The Legislature is prohibited from exempting any group from the merit system of employment although a few agencies are temporarily exempted, with the provision that most of the exempt classes may be included by future legislative act.

"Any present employee who has not passed a competitive examination must serve a probationary period during which, if his services are unsatisfactory, he may be dismissed without formality. Thus, each employee must prove his worth before acquiring permanent status.

"To sum up, this constitutional amendment provides: (1) Employment in the classified service based solely on merit and efficiency; (2) a nonpartisan Personnel Board; (3) prohibition against exemptions from the merit system of employment; (4) correction of the temporary political appointment evil.

"Having by constitutional mandate prohibited employment on any basis except merit and efficiency, thereby eliminating as far as possible the 'spoils system' of employment, the Legislature is given a free hand in setting up laws relating to personnel administration for the best interests of the State, including the setting up of causes for dismissal such as inefficiency, misconduct, or lack of funds."