[No. C056422. Third Dist. Oct. 30, 2008.]

CONSULTING ENGINEERS AND LAND SURVEYORS OF
CALIFORNIA et al., Plaintiffs and Respondents, v.
DEPARTMENT OF TRANSPORTATION et al., Defendants and
Respondents;
PROFESSIONAL ENGINEERS IN CALIFORNIA GOVERNMENT et al.,
Interveners and Appellants.

1458

COUNSEL

Law Office of Kelley Stimpel Martinez, Kelley Stimpel Martinez; and Gerald James for Interveners and Appellants.

Stoel Rives, James P. Corn, Andrew F. Brimmer and Rachael S. Phillips for Plaintiffs and Respondents.

Bruce A. Behrens, Thomas C. Fellenz, Jose Aquirre and Laurie Epstein-Terris for Defendants and Respondents.

OPINION

**SCOTLAND, P. J.**—Article VII of California's Constitution (hereafter Article VII) defines "civil service" as the workforce of state government hired and promoted "under a general system based on merit ascertained by competitive examination." (Art. VII, § 1.) It applies to every officer and employee of state government, other than the positions listed in section 4 of Article VII.

Courts have held, with certain exceptions, that Article VII impliedly forbids the state from contracting for private companies to perform the kind of services that persons selected through the civil service system could perform "adequately and competently." (*State Compensation Ins. Fund v. Riley* (1937) 9 Cal.2d 126, 135 [69 P.2d 985]; see also *Professional Engineers v. Department of Transportation* (1997) 15 Cal.4th 543, 549–550 [63 Cal.Rptr.2d 467, 936 P.2d 473]; *California State Employees' Assn. v. State of California* (1988) 199 Cal.App.3d 840, 844–846 [245 Cal.Rptr. 232].)

In response to one such holding, California voters adopted Proposition 35 in November 2000. Entitled the "Fair Competition and Taxpayer Savings Act," Proposition 35 added Article XXII to the California Constitution (hereafter Article XXII) to provide that the State of California and all other governmental entities "shall be allowed to contract with qualified private entities for architectural and engineering services for all public works of improvement." (Art. XXII, § 1.) To leave no doubt about it, Article XXII states that "[n]othing contained in Article VII of this Constitution shall be

construed to limit, restrict or prohibit the State or any other governmental entities . . . from contracting with private entities for the performance of architectural and engineering services" (Art. XXII, § 2), and that the choice and authority to contract with private entities for architectural and engineering services for public works projects "shall extend to all phases of project development including permitting and environmental studies, rights-of-way services, design phase services and construction phase services" (Art. XXII, § 1).

In 2006, the Legislature enacted Senate Bill No. 1026 (2005–2006 Reg. Sess.), codified in part in Public Contract Code sections 20209.20 through 20209.44, authorizing the Los Angeles County Metropolitan Transportation Authority to construct a high-occupancy vehicle lane on a state highway.[1] The statutes require that civil service employees prepare the performance specifications and any plans, preliminary engineering, environmental documents, prebid services, and project reports (Pub. Contract Code, § 20209.26, subd. (a)(2) (hereafter section 20209.26(a)(2)); civil service employees perform the construction inspection for the project (Pub. Contract Code, § 20209.32, subd. (b) (hereafter section 20209.32(b)); and (3) civil service employees perform the quality control inspection for the project (Pub. Contract Code, § 20209.34; further section references are to the Pub. Contract Code unless otherwise specified).

Consulting Engineers and Land Surveyors of California (CELSOC) filed this action against California's Department of Transportation (Caltrans), seeking (1) a judicial determination that the civil service provisions of Senate Bill No. 1026 (2005–2006 Reg. Sess.)—requiring that certain work on the project must be performed by employees of Caltrans—violate Article XXII, and (2) an order permanently enjoining Caltrans from implementing those statutory provisions.

Caltrans admitted the material allegations of the complaint and did not oppose CELSOC's motion for judgment on the pleadings. The trial court granted CELSOC's motion and entered a judgment declaring sections 20209.26(a)(2), 20209.32(b), and 20209.34 unconstitutional, and enjoining their implementation.

Professional Engineers in California Government (PECG), which was granted leave to intervene after the entry of judgment, appeals.

As we will explain, the trial court correctly concluded that the challenged statutes are unconstitutional. Thus, we shall affirm the judgment.

---

[1] Without the legislation, the Los Angeles County Metropolitan Transportation Authority would lack authority to improve a state highway project. (Sts. & Hy. Code, §§ 90, 91.)

## DISCUSSION

■ The Legislature "cannot take action, whether by statute or MOU [memorandum of understanding], that contravenes a constitutional provision." (*Consulting Engineers & Land Surveyors of California, Inc. v. Professional Engineers in California Government* (2007) 42 Cal.4th 578, 588 [67 Cal.Rptr.3d 485, 169 P.3d 903] (hereafter *CELSOC v. PECG*).)

The Constitution of the State of California unequivocally authorizes governmental entities to contract with qualified private entities for architectural and engineering services for all public works of improvement. This authorization extends to all phases of project development, including permitting and environmental studies, rights-of-way services, design phase services, and construction phase services. (Art. XXII, §§ 1, 2.)

Nevertheless, the Legislature enacted statutes compelling the use of civil service employees to perform such services for a public works project of the Los Angeles County Metropolitan Transportation Authority (the authority), i.e., the construction of a high-occupancy vehicle lane (the project) using a design-build process, in which both the design and construction of a project are performed by a single entity. This differs from the traditional design-bid-build process, in which the best qualified entity is selected to design the project, and competitive bids are taken from other entities for the performance of construction services. (Legis. Analyst, Design-Build: An Alternative Construction System (Feb. 3, 2005) pp. 3, 6.)

Section 20209.26 states in pertinent part: "Bidding for the project shall progress as follows: [¶] (a)(1) The authority, with the approval of [Caltrans], shall prepare or cause to be prepared, a set of documents setting forth the scope of the project, as set forth in this subdivision. [¶] (2) [Caltrans] shall prepare documents that may include, but need not be limited to, the size, type, and desired design character of the project, performance specifications covering the quality of materials, equipment, and workmanship, preliminary plans, and any other information deemed necessary to describe adequately the authority's needs. The performance specifications and any plans, preliminary engineering, environmental documents, prebid services, and project reports shall be performed by employees of [Caltrans]. The preliminary engineering and project reports shall be performed by professional engineers employed by [Caltrans]."

Section 20209.32 states: "(a) A deviation from the performance criteria and standards established under subdivision (a) of Section 20209.26 may not be authorized except by written consent of the authority and [Caltrans]. [¶] (b) The employees of [Caltrans] shall perform the construction inspection for

the project constructed under this article, including surveying and testing the materials for the project. All design related documents shall be public records."

Section 20209.34 states: "Quality control inspection for the construction of the project utilizing the design-build approach authorized by this article shall be performed by employees of [Caltrans]."

PECG does not dispute CELSOC's contention, and Caltrans's concession, that to the extent those statutes *require* the use of Caltrans civil service employees to perform certain work on the authority's project, they conflict with the constitutional directive that any governmental entity "shall be allowed to contract with qualified private entities for architectural and engineering services for all public works of improvement." (Art. XXII, § 1.)

In PECG's view, however, the conflict is permitted by Proposition 35 because it expressly authorizes the Legislature to use a different procurement method for design-build projects, like the one in this case.

PECG relies on Government Code section 4529.13 (added by initiative measure, Prop. 35, § 4, eff. Nov. 8, 2000), which states: "Nothing contained in this act shall be construed to change project design standards, seismic safety standards or project construction standards established by state, regional or local governmental entities. *Nor shall any provision of this act be construed to prohibit or restrict the authority of the Legislature to statutorily provide different procurement methods for design-build projects* or design-build-and-operate projects." (Italics added.)

PECG reasons that because Senate Bill No. 1026 (2005–2006 Reg. Sess.) addresses a design-build project, the Legislature had the authority to use a different procurement method, which encompasses dictating that state employees be used for certain architectural and engineering services. This is a tortured interpretation of the statutory language.

When interpreting a voter initiative, courts give the words their ordinary meaning, viewed in light of the context of the overall statutory scheme and purpose. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900–901 [135 Cal.Rptr.2d 30, 69 P.3d 951].) If the terms are unambiguous, we presume the voters meant what they said, and the plain meaning of the language governs. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) "When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (*People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27].)

■ Proposition 35 unambiguously provides that the State of California and any other governmental entities "shall be allowed to contract with qualified private entities for architectural and engineering services for all public works of improvement." (Art. XXII, § 1.) Its purpose was to remove then existing restrictions on contracting out for architectural and engineering services; to allow any government entity to use qualified private firms to help deliver transportation and infrastructure projects safely; and to promote fair competition in order to obtain the best quality and value for California taxpayers. (Initiative measure, Prop. 35, § 2.) To achieve these objectives, California's electorate voted "to permit the unfettered use of private entities for architectural and engineering services should the agency choose to exercise its authority to do so." (*CELSOC v. PECG, supra,* 42 Cal.4th at p. 588.)

The intention of Proposition 35 to promote fair competition is codified in Government Code section 4529.12, which provides: "All architectural and engineering services shall be procured pursuant to a fair, competitive selection process which prohibits governmental agency employees from participating in the selection process when they have a financial or business relationship with any private entity seeking the contract, and the procedure shall require compliance with all laws regarding political contributions, conflicts of interest or unlawful activities."·

Immediately thereafter, Government Code section 4529.13 says that no provision of Proposition 35 shall "be construed to prohibit or restrict the authority of the Legislature to statutorily provide different procurement methods for design-build projects or design-build-and-operate projects."

■ Government Code section 4529.13 does not state or suggest in any way that Proposition 35's grant of freedom to contract with private architects and engineers in all phases of a project does not apply to design-build projects. Surely, such an expansive exclusion from the purpose of Proposition 35 would have been set forth plainly in the initiative if that had been its intention.

· Government Code section 4529.13 merely says· the Legislature is not limited in providing for "different procurement methods for design-build projects . . . ." As is evident from the preceding statute, Government Code section 4529.12, "procurement method" simply refers to the manner in which private architects and engineers are selected for public works projects. Accordingly, the electorate meant that the statutory directive to use a fair, competitive process is not intended to limit the Legislature's ability to use whatever procurement method it deems necessary for design-build projects. For example, it would not be limited to, or precluded from, using a

" 'qualifications-based selection procedure,' " by which the award of architectural and engineering contracts is based primarily on qualifications rather than cost. (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1048–1050 [56 Cal.Rptr.3d 814, 155 P.3d 226]; see Gov. Code, §§ 4526, 4528, subd. (a)(1).)

Even the materials we judicially noticed at the request of PECG reflect that a "procurement method" refers to the method of selecting the private contractor responsible for the design and construction services. For example, PECG submitted the Design-Build Effectiveness Study prepared for the United States Department of Transportation—Federal Highway Administration (Jan. 2006). According to the study, the "predominant procurement method" for design-build projects completed in 2002 was the low-bid method. Other procurement methods included best value, multiparameter bidding, and alternative bids/designs. Contracting agencies that were most satisfied with using a design-build method of project delivery used a best-value procurement method, and agencies that were least satisfied used a low-bid procurement method. The report concluded that state statutes should be changed to permit use of the best-value procurement approach for design-build projects.

PECG argues that the challenged statutes may not be declared unconstitutional unless they clearly conflict with Proposition 35; if a statute is susceptible of two reasonable constructions, one of which is constitutional and one which is not, we must adopt the constitutional construction. According to PECG, sections 20209.26(a)(2), 20209.32(b), and 20209.34 are not unconstitutional because Government Code section 4529.13's reference to "procurement method[]" may reasonably be interpreted as referring to the method of procuring the *project* (e.g., design-build, design-bid-build or some other method), not the method of procuring the design-build *contract* for the project (e.g., lowest bid, best qualified, or some other selection process). In PECG's view, Government Code section 4529.13 provides that the Legislature is free to adopt alternative types of design-build projects in which one entity provides the majority of the design and construction services, but civil service employees prepare the reports and perform the inspections.

The plain language of Government Code section 4529.13 does not lend itself to PECG's proposed interpretation, i.e., that nothing in Proposition 35 shall be construed as limiting the Legislature's ability to devise or use a modified design-build process. It says only that the Legislature is not limited in providing for "different procurement methods for design-build" projects.

Interpreting Government Code section 4529.13 as PECG suggests would eviscerate the purpose of Proposition 35, which is to give government entities

unfettered discretion to contract with qualified private architects and engineers for any and all phases of public works projects. PECG's interpretation would mean the Legislature could evade the mandate of Proposition 35 by the simple expedient of designating all new public works projects as design-build projects, and directing that civil service employees be used in such projects under the guise of calling it a "different procurement method."

There being no evidence that it was the electorate's design to build such an escape hatch into Proposition 35, it is unreasonable and impermissible to interpret Government Code section 4529.13 in a manner negating the primary purpose of the constitutional amendment.

■ The Legislature has authority to implement a modified design-build process whereby an independent entity other than the designer-builder performs certain architectural and engineering reports and inspections. (See, e.g., § 20209.7, subd. (a) [in transit district design-build projects, "[t]he performance specifications and any plans shall be prepared by a design professional duly licensed or registered in California"].) But without violating Proposition 35, the Legislature cannot require that those reports and inspections be performed by civil service employees.

The trial court correctly held that the portions of sections 20209.26(a)(2), 20209.32(b), and 20209.34 requiring that certain architectural and engineering work must be performed by architects and engineers employed by Caltrans are unconstitutional.[2] (Stats. 2006, ch. 1, § 3.) Caltrans *may choose* to have this work performed by its employees, but the Legislature *cannot mandate* that Caltrans do so.

■ Under the circumstances, the following statutory directives are unconstitutional because they mandate that certain activities be performed by employees of Caltrans: (1) the second and third sentences of section 20209.26(a)(2); (2) the first sentence of section 20209.32(b); and (3) section 20209.34. Our conclusion is consistent with the essence of the trial court's judgment. However, the judgment is overly broad in that it invalidates the entirety of sections 20209.26(a)(2) and 20209.32(b), rather than just the aforementioned unconstitutional provisions. We shall modify the judgment accordingly.

[2] Section 3 of Senate Bill No. 1026 (2005–2006 Reg. Sess.) (Stats. 2006, ch. 1, § 3) states: "The provisions of this act are severable. If any provision of this act or application of the provisions of this act is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application."

## DISPOSITION

The judgment is modified to invalidate as unconstitutional the second and third sentences of section 20209.26(a)(2), the first sentence of section 20209.32(b), and section 20209.34. As modified, the judgment is affirmed. This court's prior order staying the trial court's "order re plaintiffs' motion for judgment on the pleadings" is vacated upon the finality of this opinion. PECG shall reimburse CELSOC for its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Davis, J., and Cantil-Sakauye, J., concurred.

A petition for a rehearing was denied November 25, 2008.