[No. C008232. Third Dist. Nov. 16, 1990.]

UPJOHN COMPANY, Petitioner, v.
LINDA STOCKDALE BREWER, as Director, etc., et al.,
Respondents.

## COUNSEL

McDonough, Holland & Allen, Richard M. Ross and Parker, Milliken, Clark, O'Hara & Samuelian for Petitioner.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Richard M. Frank and Shelley Mydans, Deputy Attorneys General, John D. Smith and Barbara Eckard for Respondents.

## OPINION

**PUGLIA, P. J.—** ▇ Petitioner Upjohn Company (plaintiff) seeks a writ of mandate compelling the respondents, Office of Administrative Law and Department of Finance (defendants), to add to the Medi-Cal Drug Formulary (formulary) a prescription drug marketed by plaintiff. Plaintiff claims defendants have a mandatory duty pursuant to Welfare and Institutions Code section 14105.9 to add such drug to the formulary. The issue presented is whether Welfare and Institutions Code section 14105.9 survived the Governor's "veto" of section 54.3 of chapter 268 of the statutes of 1984 which added section 14105.9 to the Welfare and Institutions Code. Relying on *Harbor* v. *Deukmejian* (1987) 43 Cal.3d 1078 [240 Cal.Rptr. 569, 742 P.2d 1290], plaintiff asserts the veto of this section by the Governor was unconstitutional and, the veto being invalid, the section must be held to be valid. Defendants also rely on *Harbor*, arguing that its analysis

applied to these facts compels this court to uphold the Governor's veto notwithstanding its constitutional infirmity. As we shall explain, defendants' argument is logically compelling and legally correct.

The facts are convoluted. Plaintiff, a pharmaceutical manufacturer, manufactures a drug called flurbiprofen, a nonsteroid anti-inflammatory drug known by the trade name, Ansaid. It is this drug which plaintiff seeks to have added to the formulary. The formulary is a list of drugs which may be prescribed to Medi-Cal patients without prior authorization from the Department of Health Services. (See Welf. & Inst. Code, §§ 14133.1, subd. (b); 14195; Cal. Code Regs., tit. 22, § 59999, subd. (a).) If plaintiff succeeds in having Ansaid added to the formulary, doctors participating in the Medi-Cal program will be more inclined to prescribe it for their patients since prior authorization by Department of Health Services will not be necessary.

Ordinarily, to add a drug to the formulary, the Department of Health Services proposes a regulation amending the formulary pursuant to a statutory process (the normal regulatory process). (See Welf. & Inst. Code, §§ 14105.4, 14105.41, subd. (c).) This process requires public notice and hearing and review of the drug by the Medical Therapeutic and Drug Advisory Committee. (Welf. & Inst. Code, § 14105.4, 14105.41; Cal. Code Regs., tit. 22, § 59999, subd. (a)(13)(G), (H).) Thereafter, the Department of Health Services determines in its discretion whether the drug should be added to the formulary. The criteria to be used in making such determination include cost, essential need, safety, efficacy and misuse potential. (Welf. & Inst. Code, § 14105.4, subds. (d), (e)(1); Cal. Code. Regs, tit. 22, § 59999, subd. (a)(13)(E).)

If the Director of the Department of Health Services determines the drug should be added to the formulary, the new regulation is reviewed by the Office of Administrative Law to determine whether its adoption complied with the Administrative Procedure Act. (Welf. & Inst. Code, §§ 14105.4, subd. (d), 14105.41, subd. (a).) Where the budget act so provides, the regulation must also be submitted to the Department of Finance for fiscal review prior to being reviewed by the Office of Administrative Law. (See Gov. Code, § 13075; Welf. & Inst. Code, § 14105.65, subd. (c).)

Occasionally the Legislature excepts certain drugs from the "normal regulatory process." (E.g., Welf. & Inst. Code, §§ 14105.43, 14133.2.) The Legislature by statute has provided for the addition of certain drugs to the formulary without the requirement of testing, submission to the discretion of the Department of Health Services, or review by either the Office of Administrative Law or the Department of Finance. (Welf. & Inst. Code, § 14105.43.) Welfare and Institutions Code section 14105.9 is just such a

statutory exception to the normal regulatory process for nonsteroid anti-inflammatory drugs, such as Ansaid, that have already received approval by the federal Food and Drug Administration.

In June 1984, the Legislature passed the Budget Act for fiscal year 1984-1985. (Stats. 1984, ch. 258, p. 874 et seq.) Shortly thereafter, the Legislature passed Senate Bill No. 1379 (SB 1379) as a trailer bill to the Budget Act. SB 1379 appears in the 1984 statutes as chapter 268. (Stats. 1984, ch. 268, p. 1302 et seq.) SB 1379 contained 71 sections "enacting, amending, and repealing numerous provisions in numerous codes" (*Harbor, supra,* 43 Cal.3d at p. 1083), but none of its provisions was to become operative unless the Budget Act was approved by the Governor. (Stats. 1984, ch. 268, § 70, p. 1407.)

Among the provisions contained in SB 1379 was section 45.5, at issue in *Harbor.* Section 45.5 would have amended Welfare and Institutions Code section 11056 to allow recipients of aid to families with dependent children (AFDC) to be paid from the time application for benefits was made rather than from the date the application was processed. It would also have required the Director of the Department of Social Services to adopt regulations to implement its provisions within 30 days of the enactment of SB 1379. (Stats. 1984, ch. 268, § 45.5, p. 1383.)

Also contained in SB 1379 was section 54.3, which provided: "Section 14105.9 is added to the Welfare and Institutions Code, to read: [¶] 14105.9. Notwithstanding any other provision of law, all nonsteroid anti-inflammatory drugs approved by the federal Food and Drug Administration shall be included in the Medi-Cal Drug Formulary." (Stats. 1984, ch. 268, p. 1398.) As noted previously, Welfare and Institutions Code section 14105.9 would have exempted Ansaid from the normal regulatory process, allowing it to be added to the formulary solely on the basis that it had been approved for use by the federal Food and Drug Administration.

The Budget Act was approved by the Governor, but he reduced certain of its items of appropriation. (See e.g., Stats. 1984, ch. 258, item 5180-001-001, schedule 10.04.005, p. 847.) Two days later, the Governor approved SB 1379, but he "vetoed" 13 of its sections, including sections 45.5 relating to payment of AFDC benefits, and 54.3 adding Welfare and Institutions Code section 14105.9, which would except Ansaid from the normal regulatory process. (Stats. 1984, ch. 268, pp. 1303-1305.)

As a result of the Governor's "veto" of section 45.5 of SB 1379, the Director of the Department of Social Services refused to adopt regulations

to implement the provisions of that section. *Harbor* involved a challenge by AFDC applicants to compel the Director to adopt such regulations, claiming the Governor's veto was ineffective because his veto power did not extend to disapproving parts of bills which were not appropriation measures. (43 Cal.3d at pp. 1083-1084.)

The Supreme Court agreed with this analysis of the Governor's veto power. "[I]n exercising the power of the veto the Governor may act only as permitted by the Constitution. That authority is to veto a 'bill' (art. IV, § 10, subd. (a)) or to 'reduce or eliminate one or more items of appropriation' (*id.*, subd. (b)). [¶] The Governor did not veto [SB] 1379 . . . . [¶] [Nor] can [it] be seriously claimed that section 45.5 qualifies as an item of appropriation . . . ." (*Harbor, supra,* 43 Cal.3d at p. 1089, fn. omitted.)

The *Harbor* court further concluded, however, that SB 1379 *itself* was unconstitutional. Article IV, section 9 of the California Constitution provides that a "statute shall embrace but one subject, which shall be expressed in its title." Noting that SB 1379 amended, repealed or added approximately 150 sections in more than 20 codes, the court had little difficulty in holding the bill violative of the "single subject" rule. (*Harbor, supra,* 43 Cal.3d, at pp. 1094-1101.)

Having so held, the court was faced with "the difficult question of the effect of our ruling that the Governor's veto of section 45.5 was invalid and that [SB] 1379 violates the single subject rule . . . . [¶] [R]etroactive application of our ruling in this instance would have serious consequences far beyond the question of the validity of section 45.5. It would mean not only that the many provisions contained in [SB] 1379 in addition to section 45.5 are invalid, but the door would be opened to a challenge to numerous other provisions of substantive law contained in prior so-called budget implementation acts . . . . [¶] In view of this conclusion, we hold . . . that our determination as to the Governor's veto power should not apply to section 45.5. The Governor would clearly have had the power to veto section 45.5 if it had been passed by the Legislature as a separate bill. His inability to do so was frustrated by the Legislature's unlawful inclusion of the section in a multisubject bill. In these circumstances, an evenhanded respect for the executive and legislative branches of government leads us to invoke an exception to the general rule of retroactivity [citation] so as to achieve a result that most closely conforms to the outcome that would have occurred if both the Legislature and the Governor had complied with the law. Accordingly, the Governor's veto of section 45.5 will not be invalidated and only that section of [SB] 1379 will be rendered inoperative." (*Harbor, supra,* 43 Cal.3d, at pp. 1101-1102.)

The question here presented is whether in light of *Harbor* the Governor's "veto" of section 54.3 of SB 1379 rendered Welfare and Institutions Code section 14105.9 inoperative. Plaintiff claims it did not, relying on *Harbor*'s holding that only section 45.5 would be invalidated and rendered inoperative. (See *Harbor, supra,* 43 Cal.3d 1078.)

Plaintiff overlooks the fact the *Harbor* court addressed only the "veto" of section 45.5 of SB 1379 because the validity of that section was the only issue before the court. None of the other Governor's "vetoes" of parts of SB 1379 was before the court which therefore did not address their validity. "[A] decision does not stand for a proposition not considered by the court." (*People v. Harris* (1989) 47 Cal.3d 1047, 1071 [255 Cal.Rptr. 352, 767 P.2d 619].) However, the court made clear its intention to leave intact the actions of both the Legislature and the Governor. (*Harbor, supra,* 43 Cal.3d at p. 1102.) As with section 45.5, the Governor clearly would have had the power to veto section 54.3 of SB 1379 if it had been enacted as a separate bill. Under these circumstances, we are constrained by *Harbor* to show an "evenhanded respect" for both the legislative and executive branches by reaching a result "that most closely conforms to the outcome that would have occurred if both the Legislature and the Governor had complied with the law." (43 Cal.3d at p. 1102.) In order to achieve that result, we shall give effect to the Governor's veto of section 54.3.

Since the veto of section 54.3 of SB 1379 was effective, Welfare and Institutions Code section 14105.9 never became law. Absent a valid statutory exception, Ansaid can be added to the formulary only after testing and approval pursuant to the "normal regulatory process." Because plaintiff never requested that Ansaid be added to the formulary pursuant to the normal regulatory process, plaintiff has no cause for complaint here. (Cf. *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 170 [188 Cal.Rptr. 104, 655 P.2d 306].)[1]

---

[1] After plaintiff filed its petition for writ of mandate, the Legislature established an entirely different procedure for adding drugs to the formulary. (Stats. 1990, ch. 456, § 14, effective July 31, 1990; Stats. 1990, ch. 457, § 7, effective July 31, 1990.) In fact, the formulary has been deleted and replaced with a "list of contract drugs." (Welf. & Inst. Code, § 14105.35, subd. (a)(1), subd. (b).) This matter is not moot, however, because if plaintiff were to prevail in this proceeding to mandate the placement of Ansaid on the formulary, Ansaid would remain on the "list of contract drugs" until such time as the new procedures for retaining drugs on that list are implemented. (See Welf. & Inst. Code, § 14105.35, subd. (a)(1).) Nonetheless, we reiterate that the procedures for adding a drug to the formulary as described in this opinion are no longer in existence.

The petition for writ of mandate is denied and the alternative writ previously issued is discharged. Defendants will receive their costs.

Sparks, J., and DeCristoforo, J., concurred.