TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 99-310 |
| of | : | October 28, 1999 |
| BILL LOCKYER<br>Attorney General | : | |
| GREGORY L. GONOT<br>Deputy Attorney General | : | |

THE DEPARTMENT OF DEVELOPMENTAL SERVICES has requested an opinion on the following question:

May the Department of Developmental Services contract with a corporation employing disabled persons to provide janitorial services at state developmental centers without following an advertised, competitive bidding process?

CONCLUSION

The Department of Developmental Services may not contract with a corporation employing disabled persons to provide janitorial services at state developmental centers without following an advertised, competitive bidding process.

ANALYSIS

The policy of the state is to encourage public agencies to contract for services performed by disabled persons. Welfare and Institutions Code section 19403[1] states:

"It is the intent of the Legislature to encourage state organizations, cities, counties, districts, and other political subdivisions to purchase products manufactured by and services provided by public or private nonprofit California corporations operating workshops serving individuals with disabilities whenever it is feasible to do so and the proximity of the public or private nonprofit California corporations operating workshops serving individuals with disabilities makes the purchases reasonably convenient and to provide equality of competitive advantage for organizations operating workshops for individuals with disabilities and organizations operating workshops for individuals who are blind."

In furtherance of this policy, the Legislature has enacted section 19404, authorizing public agencies to contract for services performed by disabled persons without advertising or following a competitive bidding process:

"Any state agency, city or county, political subdivision, or district of this state may, *without advertising or calling for bids*, purchase materials and supplies manufactured and services provided by public or private nonprofit California corporations operating community rehabilitation programs serving persons with disabilities who have indicated an interest in supplying those goods and services and may, on an equitable basis apportion the business among the interested community rehabilitation programs, provided the goods or services meet the specifications and needs of the purchasing agency and are purchased at a fair market price, as determined by the appropriate state or local agency and provided that the public or private nonprofit California corporations comply with all of the following requirements:

"(a)(1) Contract work obtained under this section shall be performed by a labor force which is comprised primarily of persons with disabilities, as measured by the percentage of person-hours of direct labor devoted to the contract work.

_____

[1] All references to the Welfare and Institutions Code prior to footnote 4 are by section number only.

"(2) For purposes of this paragraph, 'primarily' means 75 percent or greater.

"(3) Agree to make those elections permitted of any nonprofit corporation under the federal Insurance Contributions Act and the California Unemployment Insurance Code in order to provide social security and unemployment and disability benefits for its employees commencing with its first contract or purchase order under this section and continuing thereafter. In the event that the nonprofit corporation ceases to provide those benefits, any existing contract or purchase order under this section with the corporation is terminated and no further contracts or purchase orders shall be awarded to that corporation for the period of two years after the corporation ceases to provide the benefits. For the purposes of this subdivision, a person with a disability shall be considered an employee when performing productive work.

"(4) Provide in its articles of incorporation that at least two of the directors of its board of directors shall be comprised of persons with disabilities or the parents, guardians, or conservators of individuals with disabilities. Directors who are also employees of the nonprofit corporation shall not participate in or be present at discussions of the board of directors concerned with labor-management contract negotiations.

"(5) Provide for disabled employees of the nonprofit corporation benefits and other employer-employee agreements substantially equal to those benefits and agreements entered into between each nonprofit corporation and the representatives designated by a majority of the employees.

"(6) Not commit any unfair labor practices as defined in Section 8(a) of the National Labor Relations Act.

"(7) Abide by the provisions of the Federal Fair Labor Standards Act, the Walsh-Healy Public Contract Act, the Wagner O'Day Act, and the regulations of the State Division of Industrial Welfare.

"(b) For purposes of this section a 'person with a disability' means any person, other than a person who is blind, who is so severely incapacitated by any physical or mental disability that he or she cannot currently engage in normal competitive employment because of the disability." (Italics added.)

The question presented for resolution concerns whether the Department of Developmental

Services ("Department") may contract with a corporation employing disabled persons to provide janitorial services at state developmental centers[2] without following an advertised, competitive bidding process. If only sections 19403 and 19404 were to govern our inquiry, the obvious answer would be that the Department could so contract. Section 19404 authorizes a state agency to obtain services "without advertising or calling for bids" in the specified circumstances. However, sections 19403 and 19404 do not stand alone; their application must be considered in light of the Constitution. We conclude that the Constitution, as implemented by the Legislature, prohibits execution of the proposed contracts by the Department.[3]

Section 1 of article VII of the Constitution provides:

"(a) The civil service includes every officer and employee of the State except as otherwise provided in this Constitution.

"(b) In the civil service permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination."

Although article VII of the Constitution does not expressly so state, the courts have determined that by establishing the state civil service system, the Constitution impliedly prohibits state agencies from contracting with private entities to perform work that could be performed by state civil service employees. In *Department of Transportation* v. *Chavez* (1992) 7 Cal.App.4th 407, the court rejected a contract proposal to have disabled persons perform janitorial services for a state agency, stating in part: "Decisional law interprets article VII as a restriction on contracting out state work to the private sector. [Citation.]" (*Id.*, at p. 413.) In *California State Employees' Assn.* v. *State Personnel Bd.* (1995) 41 Cal.App.4th 793, the court again rejected a contract proposal to have disabled persons perform janitorial services at a state facility, explaining in part: "Generally, the state's work must be performed by state workers. [Citation.]" (*Id.*, at p. 795.) In *California State Employees' Assn.* v. *State of California* (1988) 199 Cal.App.3d 840, 844, the court observed:

---

[2] State developmental centers are state hospitals under the jurisdiction of the Department. (§ 4440.5.)

[3] Even though opinions of the Attorney General are not controlling on the meaning of a constitutional provision or statute, they are accorded great weight by the courts. (*Worthington* v. *California Unemployment Ins. Bd.* (1976) 64 Cal.App.3d 384, 388; *D'Amico* v. *Bd. Of Medical Examiners* (1970) 6 Cal.App.3d 716, 724.) When an opinion addresses a statute that is later amended in a way that leaves intact language interpreted by the Attorney General, the opinion is particularly persuasive. (*California Assoc. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 17; *Tiffany* v. *Sierra Sands Unified Sch. Dist.* (1980) 103 Cal.App.3d 218, 227.) These opinions are not esoteric discussions of legal philosophy or policy references, but rather answers to inquiring agencies to facilitate the day-to-day operation of government as contemporaneous administrative interpretations of law. (See *San Joaquin County Employees Assoc., Inc.* v. *County of San Joaquin* (1974) 39 Cal.App.3d 83, 88.)

> "Decisional law interprets article VII as a restriction on the 'contracting out' of state activities or tasks to the private sector. [Citations.] The restriction does not arise from the express language of article VII. [Citation.] 'Rather, it emanates from an implicit necessity for protecting the policy of the organic civil service mandate against dissolution and destruction.' [Citation.]"

Accordingly, while sections 19403 and 19404 may be applied in numerous situations, such as the purchase of materials and supplies by a public agency and the contracting for services by a non-state agency, without violating the state civil service laws, they cannot be applied so as to conflict with article VII. (*Department of Transportation* v. *Chavez*, *supra*, 7 Cal.App.4th at 414-417; see also *Professional Engineers* v. *Department of Transportation* (1997) 15 Cal.4th 543, 565, 569; *California State Employees' Assn.* v. *State of California*, *supra*, 199 Cal.App.3d at 845-846.)

Are there any exceptions to the constitutional prohibition that would allow application of sections 19403 and 19404 in the proposed circumstances? Three exceptions have been found by the courts.[4] The first is the "nature of services" exception. Under this exception, the issue is whether any state civil employee could adequately, competently, and satisfactorily perform the particular services; if not, the state may contract with a private party to perform the specific services. (*Professional Engineers* v. *Department of Transportation*, *supra*, 15 Cal.4th at 549, 563-564; *Burum* v. *State Compensation Ins. Fund* (1947) 30 Cal.2d 575, 580; *Professional Engineers* v. *Department of Transportation* (1993) 13 Cal.App.4th 585, 593; *Department of Transportation* v. *Chavez*, *supra*, 7 Cal.App.4th at 413; *California State Employees' Assn.* v. *State of California*, *supra*, 199 Cal.App.3d at 848; *Stockburger* v. *Riley* (1937) 21 Cal.App.2d 165, 166-170.) In the leading case of *State Compensation Ins. Fund* v. *Riley* (1937) 9 Cal.2d 126, 135, the Supreme Court rejected a proposal to contract for the services of attorneys outside of the state civil service system, declaring:

> ". . . [T]he true test is . . . whether the services contracted for, whether temporary or permanent, are of such a nature that they could be performed by one selected under the provisions of civil service. If the services could be so performed then in our opinion it is mandatory upon such appointing power to proceed in accordance with the provisions of the Constitution and statute above summarized. As already stated, the petition does not allege that the services here involved could not be performed satisfactorily by an attorney selected under civil service. The services contracted for are the services of an attorney. Attorneys are included within civil service, and in the absence of a showing to the contrary we must assume that such services could be

---

[4] Although additional exceptions may be developed (see *Professional Engineers* v. *Department of Transportation*, *supra*, 15 Cal.4th at 568), we limit our discussion to those that have already received judicial approval.

adequately and competently performed by one selected in accordance with the mandate of the Constitution."

The *Riley* test was recently reaffirmed by the Supreme Court in *Professional Engineers* v. *Department of Transportation*, *supra*, 15 Cal.4th at 563-564:

> ". . . As an analytical matter, *Riley's* rule seems appropriate to assure that the state civil service is not neglected, diminished, or destroyed through routine appointments to 'independent contractors' made solely on the basis of political considerations or cronyism. (See *Williams*, *supra*, 7 Cal.App.3d at p. 397 [*Riley* rule 'emanates from an implicit necessity for protecting the policy of the organic civil service mandate against dissolution and destruction']; *CSEA*, *supra*, 199 Cal.App.3d at pp. 846-847 [dual purposes of article VII are to promote efficiency and economy in state government, and to eliminate the ' "spoils system" ' of political patronage]; see also Comment, *Contracting With the State Without Meeting Civil Service Requirements* (1957) 45 Cal.L.Rev. 363, 364 ['The inclusion of independent contractors is of vital importance as it cuts off a wide area of possible subversion of the civil service system.'].)

> "As plaintiffs observe, 'Were the rule otherwise, the civil service system could be entirely undone by a system of contracting; and the state's work force could be dominated by independent contractors who would be hired from job to job.' Such a system, operating without regard to considerations of economy or efficiently, and open to a 'patronage/spoils system' method of contracting, would conflict with the electorate's probable intent in adopting article VII and its predecessor.

> "Moreover, even assuming for the sake of argument that *Riley's* constitutional interpretation was originally flawed, under settled rules of construction we must presume that *Riley's* interpretation was preserved and reincorporated into the Constitution on two subsequent occasions when (1) in 1970, the voters reenacted an amended version of former article XXIV pursuant to the recommendation of the California Constitution Revision Commission, and (2) in 1976, the voters adopted the substance of former article XXIV as new article VII. [Citations.]"

Janitorial services may ordinarily be performed adequately, competently, and satisfactorily by state civil service employees. (See *California State Employees' Assn.* v. *State Personnel Bd.*, *supra*, 41 Cal.App.4th at 796; *Department of Transportation* v. *Chavez,*

*supra*, 7 Cal.App.4th at 410-411.) In *Stockburger* v. *Riley*, *supra*, 21 Cal.App.2d at 167, the court expressly found that janitorial services could be performed by state civil service employees in the circumstances presented, noting:

> "In the particular service provided in the agreement we are now considering, there is nothing urgent, temporary, or occasional in the work to be done. It requires no expert knowledge, experience or ability that cannot be obtained from those either now in employ or service of the state, or who cannot be brought into such service under the procedure provided by the Civil Service Act."

Finally with respect to the "nature of services" exception, we point out that the exception has been codified by the Legislature in Government Code section 19130, subdivision (a),[5] allowing private contracting if state civil service employees are unable to adequately, competently, and satisfactorily perform the particular services. (*California State Employees' Assn.* v. *State of California*, *supra*, 199 Cal.App.3d at 852 ["the *Riley/Burum* exception is an implicit part of subdivision (a)"]; 74 Ops.Cal.Atty.Gen. 132, 135 (1991); 73 Ops.Cal.Atty.Gen. 95, 101-102 (1990).) Subdivision (a) of section 19130 states in part:

> "Personal services contracting is permissible to achieve cost savings when all the following conditions are met:
>
> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> "(2) Proposals to contract out work shall not be approved solely on the basis that savings will result from lower contractor pay rates or benefits. Proposals to contract out work shall be eligible for approval if the contractor's wages are at the industry's level and do not significantly undercut state pay rates.
>
> "(3) The contract does not cause the displacement of civil service employees. . . ."
>
> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> "(7) The contract is awarded through a publicized, competitive bidding process."

---

[5] All references hereafter to the Government Code are by section number only.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

While cost savings may be a factor when considering the "nature of services" exception (*Professional Engineers* v. *Department of Transportation*, *supra*, 15 Cal.4th at 550; *California State Employees' Assn.* v. *State of California*, *supra*, 199 Cal.App.3d at 851), the savings cannot be based upon significantly undercutting "state pay rates." (§ 19130, subd. (a)(2); see Cal. Code Regs., tit. 2, § 279.2; *California State Employees' Assn.* v. *State Personnel Bd.*, *supra*, 41 Cal.App.4th at 796; 74 Ops.Cal.Atty.Gen., *supra*, at 135.) In any event, we believe that *all* the conditions of section 19130, subdivision (a), must be met in order for its private contracting authorization to be utilized (see *Professional Engineers* v. *Department of Transportation*, *supra*, 15 Cal.4th at 549, 567; *California State Employees' Assn.* v. *State of California*, *supra*, 199 Cal.App.3d at 845), and the most important condition is the requirement of competitive bidding (*California State Employees' Assn.* v. *State of California*, *supra*, 199 Cal.App.3d at 847). Hence, the proposal in question would violate the express requirement of section 19130, subdivision (a)(7).

In 73 Ops.Cal.Atty.Gen., *supra*, at 100, footnote 2, we left open the question whether any of the requirements of section 19130, subdivision (a), such as the competitive bidding requirement, could be waived or otherwise found inapplicable. Answering that question now, we believe that none of the requirements may be waived. (*Professional Engineers* v. *Department of Transportation*, *supra*, 15 Cal.4th at 549, 567; *California State Employees' Assn.* v. *State of California*, *supra*, 199 Cal.App.3d at 845.) The statute embodies what the Legislature has determined is necessary to meet the "nature of services" exception to the Constitution's article VII requirements. Applying well established principles of statutory construction, we find that a statute is to be interpreted " 'by the language in which it is written,' " and we are not " 'at liberty . . . to disregard any of its express provisions.' " (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097.) We are to harmonize statutes "so that all may . . . have effect" (*Moore* v. *Pannish* (1982) 32 Cal.3d 535, 541; accord, *Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268) and preserve their constitutionality if at all possible (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387). The competitive bidding requirement of section 19130, subdivision (a), provides a "safeguard against patronage and favoritism. [Citation.]" (*California State Employees' Assn.* v. *State of California*, *supra*, 199 Cal.App.3d at 847, fn. 4.) Consequently, the authorization of Welfare and Institutions Code section 19404 to contract for services performed by disabled persons cannot be applied in violation of one of the primary purposes of article VII of the Constitution or the requirements of section 19130 deemed necessary by the Legislature to protect the state's civil service system. (*Department of Transportation* v. *Chavez*, *supra*, 7 Cal.App.4th at 417.)

The other two exceptions to the constitutional prohibition can be summarily dismissed in the circumstances presented. Under the "new state function" exception, the courts have allowed state agencies to hire private contractors to perform work not previously performed by state civil service employees. (*Professional Engineers* v. *Department of Transportation*, *supra*, 15 Cal.4th at 549; *Professional Engineers* v. *Department of Transportation*, *supra*, 13 Cal.App.4th at 593; *Department of Transportation* v. *Chavez*, *supra*, 7 Cal.App.4th at 414-415; see § 19130, subd. (b)(2).) It is readily apparent that providing janitorial services is not a new state function.

The third recognized exception to the constitutional prohibition is for the conducting of an experimental program involving no expenditure of state funds. (*Professional Engineers* v. *Department of Transportation*, *supra*, 15 Cal.4th at 550-568; *Professional Engineers* v. *Department of Transportation, supra*, 13 Cal.App.4th at 593-595.)[6] Here, again, this exception would be inapplicable to the Department's contracting with private parties for janitorial services at state developmental centers.[7]

Returning to the language of Welfare and Institutions Code section 19403, we find that it would not be "feasible" for the Department to contract with private parties for janitorial services without following competitive bidding requirements due to the constraints of article VII of the Constitution. (See *Department of Transportation* v. *Chavez*, *supra*, 7 Cal.App.4th at 417.) Accordingly, we conclude that the Department may not contract with a corporation employing disabled persons to provide janitorial services at state developmental centers without following an advertised, competitive bidding process.

\* \* \* \* \*

---

[6] It is conceivable that the use of state funds in an experimental program may be permissible "if justified by considerations of economy and efficiency and if otherwise consistent with applicable civil service requirements." (*Professional Engineers* v. *Department of Transportation*, *supra*, 15 Cal.4th at 568.)

[7] Subdivision (b) of section 19130 allows for support services contracts in circumstances not present here. (See, e.g., § 19130, subd. (b)(4) [services "incidental to a contract for the purchase or lease of real or personal property"], subd. (b)(8) ["services that could not feasibly be provided by the state in the location where the services are to be performed"]; *Department of Transportation* v. *Chavez*, *supra*, 7 Cal.App.4th at 414; *California State Employees' Assn.* v. *State of California*, *supra*, 199 Cal.App.3d at 844-845.)